# THOMAS KEARNEY, Appellant, v. JOHN A. LAIRD et al., Respondents.

**St. Louis Court of Appeals, March 5, 1912.**

1. **ARREST: Police Officers of City of St. Louis: Right to Make Arrest on Suspicion.** Under the charter of the city of St. Louis, police officers are authorized to arrest persons on grounds of reasonable suspicion that they have committed an offense.

2. **INJUNCTIONS: Officers: Controlling Discretionary Acts.** Where the law casts both a right and a duty upon an officer, involving the exercise of discretion, his conduct with respect thereto is no more to be controlled by injunction than by mandamus.

3. **MUNICIPAL CORPORATIONS: Police Officers: Liability for Misconduct.** Police officers may be prosecuted criminally for an unwarranted abuse of authority, under certain circumstances, and may be required to answer at law for civil damages in other cases.

4 **INJUNCTIONS: Municipal Corporations: Police Officers: Controlling Discretionary Acts.** Public policy forbids the courts to hamper or thwart, by injunctive process, the power and discretion of the police in their performance of the duties cast upon them pertaining to the public weal.

5. ———: ———: ———: ———: **Interference with Business: Wagering on Horse Races.** Plaintiff and his clerk, who had previously been bookmakers on a race track, opened a cigar store in the city of St. Louis, to which persons who had followed and patronized horse races resorted for the purpose of placing wagers on horse races, for a commission, at an office maintained by plaintiff for that purpose in a city in another state. After depositing the amount of the wager with the clerk, the customers, acting for themselves, telephoned the wager to plaintiff's office in such other city, by means of a telephone in plaintiff's cigar store. The clerk and these customers had been arrested by the police on several occasions, on suspicion that they were laying wagers on horse races through plaintiff, but none of them were convicted. In an action by plaintiff to enjoin the police from interfering with his business by making these arrests on suspicion, *held*, that plaintiff conducted his store in defiance of sections 4748 and 4749, Revised Statutes 1909, denouncing as a felony the occupying of a building for receiving or recording wagers on horse races and the maintaining of a telephone therein for the purpose of

communicating information to any place in this or another state for the purpose of there recording wagers on horse races, etc., and that reasonable grounds of suspicion existed that the customers arrested were aiding and abetting plaintiff in violating the law, authorizing the police to arrest them, under the charter of St. Louis; and hence it is *held* that plaintiff was not entitled to injunctive relief.

Appeal from St. Louis City Circuit Court.—*Hon. William B. Homer*, Judge.

AFFIRMED.

*Frank H. Farris* for appellant.

(1) We admit that as a fundamental proposition injunction will not lie to restrain an arrest, but when the exercise of the arresting power exceeds the warrant and authority of law and goes to the extent of committing irreparable and incalculable damage to a man's property, rights and franchises, then courts of equity may be called upon and will interfere with such action, even though its effect is to enjoin the arrest. Shoe Co. v. Saxey, 131 Mo. 220; State ex rel. v. Zachritz, 166 Mo. 307; Ryan v. Jacobs, Sixth W'k Law Bulletin, p. 139; Railroad v. New York, 1 Hilt (N. Y.), 562; Cullen v. New York, 93 N. Y. Supp. 1085; Kern on Injunction, p. 2. (2) There can be but one reasonable conclusion drawn from the testimony in this case; that the police officers, and, through them, the police department, without any legal evidence, had reached the conclusion that the plaintiff in this case was a violator of the law; and well knowing that they had no legal grounds upon which to prosecute him, and no reasonable grounds upon which to expect a conviction, if prosecution were had, had determined to mete out justice to him as they thought him entitled to; and that justice was to make it impossible for him to engage in a business in the city of St. Louis and carry it on by arresting him, his employees and customers,

upon some trumped-up charge, and thereby make it impossible for him to live in the city and engage in any lawful business which he might choose. And we respectfully submit that under the facts and law of this case, the issues should have been found for appellant and equitable relief given to him in the restraint of respondents from further trespass upon his rights by arrests, except upon warrant, or without warrant only when the arresting power, in good faith, in the exercise of reasonable judgment, based upon proof, can say that a crime has been committed by appellant, his employees or those in his premises, or is about to be committed by him or them.

*Lambert E. Walther* and *Robert Burkham* for respondents.

(1) It is not only the right, but it is the duty of police officers to make arrests whenever they have reasonable ground to believe an offense has been committed. State v. Underwood, 75 Mo. 230; State v. Grant, 76 Mo. 236; R. S. 1909, sec. 9805; State v. Hancock, 73 Mo. App. 19; Wehmeyer v. Mulvihill, 150 Mo. App. 197; State v. Boyd, 108 Mo. App. 518; R. S. 1909, sec. 4748; R. S. 1909, sec. 4749; State v. Albright, 144 Mo. 638; Boeger v. Langenberg, 97 Mo. 390. (2) This case is not one of equitable cognizance for the following reasons: (a) A court of equity will not interfere by injunction to restrain or control the exercise of discretion by police authorities in the prevention of crime and in the maintenance of peace. 2 Bouvier Law Dict., p. 691; Black's Law Dict., p. 909; Fruend on Police Powers, sec. 86; R. S. 1909, sec. 9805; 22 Cyc., p. 889; Id., p. 879; 3 Abbott on Municipal Corporations, sec. 1130; Id., sec. 1137; Spelling on Injunctions, sec. 628; Id., sec. 691; Kerr on Injunctions, p. 4; High on Injunctions (4 Ed.), sec. 1326; Gaines v. Thompson, 74 U. S. 352; Decker v. Diemer,

229 Mo. 296. (b) Equity has no jurisdiction in criminal matters and will neither enjoin the commission of a crime nor an arrest therefor, nor will equity even inquire whether a crime has been committed. R. S. 1909, sec. 4411; R. S. 1909, sec. 4420; Davis v. Am. Soc., 75 N. Y. 368; Sterman v. Kennedy, 15 Abb. Pr. (N. Y.) 201; Kramer v. Police Dept., 53 N. Y. Sup. Ct. (J. & S.) 492; Campbell v. York, 30 Misc. Rep. 340; Delaney v. Flood, 183 N. Y. 323; Stevens v. McAdoo, 112 N. Y. App. Div. 458; Shepard v. Bingham, 125 N. Y. App. Div. 784; Athletic Club v. Speer, 29 Colo. 158; Adams v. Oyster & Fish Co., 34 Colo. 219; Chicago v. Wright, 69 Ill. 318; Moses v. Mayor, 52 Ala. 208; Caille Co. v. Haager, 50 S. W. (Ky.) 244. (c) Appellant has an adequate remedy at law. Sullivan v. Gas Co., 148 Cal. 368; Fincke v. Police Comm., 66 How. Pr. (N. Y.) 318; Kenny v. Martin, 11 Misc. Rep. (N. Y.) 651; Suesskind & Rehfeldt v. Bingham, Police Com., 125 N. Y. App. Div. 787; Moore v. Owen, 109 N. Y. Supp. 585. (d) Appellant does not come into equity with clean hands and should therefore be denied relief. 1 Pomeroy Eq. Juris. (3 Ed.), sec. 397; Pipe Co. v. Reservoir Co., 111 Fed. 284; Little v. Cunningham, 116 Mo. App. 545; Railroad v. Crothersville, 159 Ind. 330; Beck v. Live Stock Co., 65 Fed. 30; Danciger v. Stone, 187 Fed. 853; Weiss v. Herliby, 49 N. Y. Supp. 81. (3) There is no evidence in the record connecting these respondents with the alleged illegal acts of the police who made the arrests.

NORTONI, J.—This is a suit in equity for injunctive relief. The finding and judgment were for defendants and plaintiff prosecutes the appeal.

Plaintiff is the proprietor of a cigar and tobacco store at 407 Walnut street, St. Louis, and defendants are the board of police commissioners and the chief of police of that city. The police officers of the city had recently before made numerous arrests in plain-

tiff's store on suspicion that the persons arrested were laying wagers on horse races through him, and because of this plaintiff instituted the present suit in equity to enjoin further interference by the police with his business. The court granted a temporary injunction, but upon final hearing dissolved it and dismissed the petition. It is from this judgment that plaintiff prosecutes the appeal.

The evidence for plaintiff tends to prove that he conducts a small cigar and tobacco store at the place mentioned, in which·he maintains a stock of goods valued at about $600. For him it is shown, too, that the police officers of the city, within the period of two or three months before the institution ·of this suit, made about twenty arrests in plaintiff's establishment. One of the persons arrested was plaintiff's clerk, McAllister, and he was taken into custody several different times. Others arrested were customers of plaintiff, and it appears that the charge laid against them pertained to betting on horse races through the agency of plaintiff and his clerk, McAllister. None of the persons arrested were convicted but all were finally dismissed of the charges laid against them.

For defendants the evidence is abundant to the effect that plaintiff was a former bookmaker on the race tracks and followed the calling of laying wagers for others on horse racing. His clerk, McAllister, had formerly followed the same calling, and many of those who were arrested about his place were men who, it is said, had followed the races. It is shown that plaintiff kept and sold at his store one solitary publication and that was the Daily Racing Form, which is a paper devoted exclusively to matters connected with horse racing. Plaintiff testified that he sold this paper because it was the only one which his customers desired to purchase. It is shown that plaintiff maintained an office across the river at East St. Louis, Illinois, where he conducted the business of placing

wagers on horse races for a commission. There is an abundance of evidence in the record, too, that his clerk, McAllister, accepted deposits of money at the cigar store at 407 Walnut street and communicated, or permitted plaintiff's patrons to communicate, through a telephone therein, the placing of bets on horses at plaintiff's East St. Louis office.

The statutes denounce as guilty of a felony those who occupy any room, tenement, booth or building and engage in the business of receiving, recording or registering bets or wagers on horse races, etc. They denounce as guilty of a felony, too, the act of any person who occupies any room, shed, tenement, tent, booth, building or inclosure, or any part thereof, in this state with any telephone or telegraph instrument, or any apparatus or device of any kind whatsoever, for the purpose of communicating information to any place in this or any other state for the purpose of there recording or registering bets or wagers or selling pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to be made or to take place within or without this state, etc. [Secs. 4748, 4749, R. S. 1909.] The record before us teems with evidence tending to prove that plaintiff maintained his cigar and tobacco store at 407 Walnut street, in part at least, as an agency through which he might negotiate wagers on horse races for his customers. It is shown that people communicated bets and wagers to him in his office in East St. Louis through the telephone from the cigar store, and that others communicated bets to the clerk in charge of the store here through the telephone. According to plaintiff's evidence, the net profits from the small stock of cigars and tobacco, consisting of about $600 in value were $100 per month and the record suggests that his income was augmented from commissions received on the placing of wagers in violation of the statutes above referred to.

Though it be true that none of the persons arrested in plaintiff's store were afterward convicted on the charge laid against them, we believe the court did not err in dissolving the injunction and dismissing the bill, for obviously, plaintiff conducted his establishment at 407 Walnut street in defiance of the statute forbidding the like. Besides, under the charter of the city of St. Louis, the police are authorized to arrest persons and take them into custody on grounds of reasonable suspicion. Such is the accepted rule of decision. [See Wehmeyer v. Mulvihill, 150 Mo. App. 197, 130 S. W. 681.] The facts that both this plaintiff and his clerk were former bookmakers on the race tracks, which had recently been outlawed in Missouri by an act of the Legislature, and that plaintiff opened this small cigar store, as he did but recently after the closing down of the race tracks, with a former bookmaker in charge, and operates in conjunction therewith a racing commission office in East St. Louis, suggests a strong suspicion with respect to the establishment and those in charge at least. Those arrested were persons who frequented the place and tarried thereabout with accustomed regularity. Moreover, it is to be noted that the several persons arrested in and about plaintiff's place were men who had followed and patronized the races hereabout, and these and other facts above stated should be regarded as sufficient to give rise to grounds of reasonable suspicion that they were patronizing the place by placing wagers through the means of the telephone so commonly known to be employed for that purpose in plaintiff's establishment. Indeed, the evidence is, that these persons deposited the money to be wagered with plaintiff's clerk, McAllister, and then, acting for themselves, telephoned the bet to plaintiff in East St. Louis through his instrument. It, therefore, appeared these men were using plaintiff's telephone in conforming with his scheme to violate the

law.   If reasonable grounds of suspicion appeared to the police officers that these parties were aiding and abetting plaintiff in his scheme, then under the law it was not only their right but it was as well their duty to make the arrests complained of.   [See State v. Boyd, 108 Mo. App. 518, 84 S. W. 191.]   Where the law thus casts both a right and a duty upon an officer· or a branch of the government which involves the exercise of discretion, the officer's conduct with respect to that duty or discretion is no more to be controlled by injunction than by mandamus.   Such we understand to be the accepted rule of decision established by high authority.   [See Gaines v. Thompson, 74 U. S. 347; see, too, High on Injunctions (4 Ed.), sec. 1326; 1 Spelling on Injunctions (2 Ed.), sec. 628.]   There may be cases where police officers will be enjoined from illegally doing irreparable injury to the property of an individual through the power of their office, but this is certainly not one of them.   Such officers may be prosecuted criminally for an unwarranted abuse of authority in certain circumstances, and may be required to answer at law for civil damages in other cases.   But such a question is not one that it is competent for a court of equity to try and determine.   It would seem that a sound public policy forbids the courts should interpose by injunctive process to hamper or thwart the power and discretion of the police touching the performance of the duties which the law has cast upon them pertaining to the public weal.   A modern standard work thus states the rule: ''Police officers will not be enjoined from performing their proper duties in the exercise of the general police power, even though they perform them in an oppressive and unlawful way.   But such officers will be enjoined from illegally doing irreparable injury to the property of an individual.   Where, however, they act in good faith in warning the public concerning the plaintiff's business, they will not be enjoined.''   [See

Kearney v. Laird.

22 Cyc., 889, 890.] Mr. Spelling in his excellent work on injunctions and extraordinary remedies says: "No court has jurisdiction to interfere with the public duties of any of the departments of the government, or to override the policy of the state; and a court of equity is without power to enjoin the exercise of the police powers given by law to the officers of a municipal corporation, so as to prevent such officers from preserving the public peace, such for instance as keeping a public street open to public use. Nor will an injunction issue to restrain an interference by the police authorities with the business of a liquor dealer by arresting him and his employees. If the arrests are illegal, *habeas corpus* and suits for damages afford him ample remedy. And an injunction was refused where sought to restrain the police authorities within a metropolitan police district from placing policemen in front of a public house in which guests had been repeatedly subjected to unjust, exorbitant, and illegal charges, and from giving warning to strangers about to enter to be careful. Nor does it alter the case that police supervision is exercised in an arbitrary and unlawful manner. The remedy is by action for damages, or by a criminal prosecution." For adjudications by courts of first importance in affirmance of the doctrine above stated in cases much resembling this one, see Delaney v. Flood, 183 N. Y. 323; Stevens v. McAdoo, 112 N. Y. App. Div. 458; Shepard v. Bingham, Police Commissioner, 125 N. Y. App. Div. 784; see Chicago v. Wright, 69 Ill. 318.

The court very properly declined to interfere with the exercises of the discretion lodged in the police, for under the law it was both their right and duty to act upon grounds of reasonable suspicion which the evidence undoubtedly reveals. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.