STATE OF MISSOURI at the relation of WILLIAM L. IGOE, ALBERT BOND LAMBERT, GEORGE T. PRIEST, JOHN J. PHELAN and BERNARD F. DICKMANN, Members of and Constituting the BOARD OF POLICE COMMISSIONERS of the City of St. Louis; JOHN J. MCCARTHY, Chief of Police of the City of St. Louis; JOHN J. CARROLL, Chief of Detectives of the City of St. Louis, and HARRY WALK, Member of the Police Department of the City of St. Louis, Relators, v. JOHN W. JOYNT, Judge of the Circuit Court of the City of St. Louis.—110 S. W. (2d) 737.

Court en Banc, September 27, 1937.

*Edgar H. Wayman, Oliver Senti* and *Charles P. Williams* for relators.

*Hyman G. Stein* and *William J. Hough* for respondent.

DOUGLAS, J.—This is an original proceeding in prohibition against Honorable John W. Joynt, a judge of the Circuit Court of the City of St. Louis. On November 30, 1936, one Sid O. Martin filed a petition in that court asking for a temporary restraining order and also that a hearing be had and thereafter a permanent injunction be issued against the members of the Board of Police Commissioners of the City of St. Louis and members of the Police Department. In his petition Martin states that in his business he owns and operates certain devices known as "rotary merchandisers" which, he alleges, are amusement devices and not gambling devices; that he has invested large sums of money in these devices, has created a valuable trade and good will in them and has contracted with many persons by leases and otherwise for the display and use of such devices; that he was arrested and the police confiscated one of the devices; that he has been notified that the police contemplate destroying the devices seized by them and will seize and destroy any other rotary merchandiser plaintiff may use in his business. He further alleges if he is not permitted to operate these devices without interference he will be deprived of his property and means of livelihood without due process of law; that he will be subject to great and irreparable loss. He prays that the defendants be restrained from preventing in any way the operation of such rotary merchandisers; from seizing them; from destroying the one already seized; from interfering with their maintenance, operation, distribution and use by patrons.

On the morning following the filing of the suit a ten-day restraining order was granted by the respondent without notice or hearing,

restraining the police from interfering with the erection, maintenance or operation of the said devices and from molesting or interfering with any person patronizing them. The defendants filed objections to the jurisdiction of the lower court which were overruled, whereupon they sought the intervention of this court through a writ of prohibition. Our preliminary rule issued to which respondent made return and relators then moved the court to make the preliminary rule absolute.

The Statutes of Missouri, 1929, by Section 4287, make it a felony for any person to set up or keep or permit any person to play on any gaming device or slot machine adopted and designed for the purpose of playing any game of chance for money or property, and by Section 4314 to establish any lottery or gift enterprise.

No evidence was taken. It is insisted for the respondent that the trial court has the power to determine its jurisdiction from the facts to be presented before it, that is to decide whether or not the machine described is a legal device, and that it should not be precluded from doing so by this court. [State ex rel. American Pigment & Chemical Co. v. Shields, 237 Mo. 329, 141 S. W. 535.] It is the rule that this court, in determining the jurisdiction of the trial court, is limited to the allegations of the petition pending there. [State ex rel. Chase v. Hall, 297 Mo. 594, 250 S. W. 64.] But if it should appear from the petition that the protection of a court of equity is sought for an unlawful device then there is no cause of action stated and prohibition will lie. [Wellston Kennel Club v. Castlen, 331 Mo. 798, 55 S. W. (2d) 288; State ex rel. Castlen v. Mulloy, 331 Mo. 776, 55 S. W. (2d) 294.]

Turning to the plaintiff's petition we find the device described as follows: "The rotary merchandiser is a cabinet-like device, the top of which has a display space in which are placed various articles of merchandise. The merchandise on display in the cabinet is placed upon a rotary disk, which said disk is manipulated and operated by the patron using the same; that when the disk is skillfully manipulated and operated by the patron it causes the rotary disk to be stopped in a position where the particular merchandise desired by the patron is placed in a position adjacent to an opening or chute and is forced into the chute and opening by a metal arm, the chute being located in the center of the disk. Attached hereto and as a part of this petition are plaintiff's exhibits A and B which are photographs of the above described device." To say that such an account of the device is meager would be understatement. We are forced to the conclusion that it was the intention of the pleader to avoid any statements which would embarrass his cause and to describe the device so artfully and adroitly as to conceal its true character and thereby to confuse the learned chancellor. There is a

studious avoidance, as repeatedly pointed out in respondent's brief, of any mention that the patron does or does not make any payment of money in connection with the operation of the device. What are the articles of merchandise? What is their value? What causes the disk to rotate? What right has a patron to manipulate and operate the disk? Does the patron receive as his property the article forced into the chute? With what frequency does a player receive an article of merchandise? As to these natural queries the account is silent.

Candor and frankness are essential requirements in an application for an injunction as equity may refuse to protect one who fails to make a full and free disclosure of all the facts relating to his case. It has been said that a plaintiff should not only show his hand, but should open it wide. [Headley v. Chester, 22 Pa. Dist. Rep. 900; Blackwell's Durham Tobacco Co. v. American Tobacco Co., 145 N. C. 367, 59 S. E. 123; McDowell v. Biddison, 120 Md. 118, 87 Atl. 752; Commonwealth v. Filiatreau, 161 Ky. 434, 170 S. W. 1182; 32 C. J., p. 325.] It will be presumed that all facts not fully and candidly disclosed by a party praying for an injunction will make against him. [Sauvinet v. New Orleans, 1 La. Ann. 346.] A similar situation arose in the case of Tonahill v. Molony, 156 La. 753, 101 So. 130, where the court denying an injunction against the police from interfering with slot machines said of the action of the lower court: "The equity jurisdiction of the court was exercised under a misunderstanding, on the part of the judge, brought about by the failure of the plaintiff or his attorney to give a better description of the slot machines; or of their *modus operandi*, in his petition for injunction."

The plaintiff has filed with his petition two photographs of the machine described therein. While it has long been the rule in this State that as an exhibit constitutes no part of a pleading it cannot be considered in determining the sufficiency of the pleading, yet it may be considered in explanation of an allegation contained in the pleading. Although it may not supply allegations to constitute a cause of action, it may make certain what would otherwise be uncertain. We have so said in Highland Investment Company v. Kansas City Computing Scales Co. et al., 277 Mo. 365, 209 S. W. 895, where we held the plaintiff bound by the terms of his exhibit. An examination of exhibits A and B discloses that the articles of merchandise are of assorted values such as a camera, cigarette lighter, fountain pen, pocket knife, jewelry and other such articles. The exhibits picture prominently the customary slot for the reception of the coin. As the petition states that the disk rotates we may safely conclude that it is the insertion of a coin in this slot that sets the machine in operation. The *modus operandi* is apparent. We find that a patron inserts a coin into the slot of the machine, the

disk rotates, the patron stops it, a metal arm moves automatically and may cause an article of merchandise to be ejected. The incentive for playing the machine must be that the player receives any article forced into the chute and that such article is of greater value than the coin inserted. Bearing in mind that these devices furnish a livelihood for the owner we can say that the article can be dispensed only for a profit, for the petition admits that by the investment of large sums of money the owner has created a valuable trade and good will which, if interfered with, will deprive him of his means of livelihood and cause him irreparable loss. It is plain that this is not a vending machine as it does not give the same return in market value for the amount paid each and every time it is operated. The statements of the pleader that the machine is to be played for amusement only and is a game of skill and is not a gambling device are merely his conclusions. The test which has been long applied is not whether the device contains an element of chance or one of skill, but what determines the result is which one is the dominating element. [People ex rel. Ellison v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601.] The device offers a chance of winning more than the sum ventured. The chief element of gambling is the chance of winning or losing. The owner is certainly not distributing merchandise for less than its value, therefore it is evident that the chance of one playing this device of obtaining one of the articles of merchandise must be greatly against him and in favor of the owner. It is clearly apparent that the dominating element of this device is that of chance and therefore it is a gambling device. [People v. Engeman, 129 App. Div. 462, 114 N. Y. Supp. 174; Re Cullinan, 114 App. Div. 654, 99 N. Y. Supp. 1097; City of Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842.] Slot machines where chances are unequal in favor of the machine are unlawful. [Territory of New Mexico v. Jones, 14 N. M. 579, 99 Pac. 338, 20 L. R. A. (N. S.) 239.]

A statement in a slot machine case of the Kansas City Court of Appeals, speaking through JOHNSON, J., is pertinent here:

"In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter, but to do violence to the spirit and thwart the beneficent objects and purposes, of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified, and cunning mechanical inventions." [Moberly v. Deskin, 169 Mo. App. 672, 155 S. W. 842.]

But respondent urges that it is only by a hearing upon the petition that the true nature of the device should be determined. In other words he would have us close our eyes to the admitted facts in the verified petition revealing the true character of the machine. These have the same force as facts found and are conclusive on the pleader.

In claiming that the true character of the device must be ascertained by a judicial hearing, counsel for respondent rest heavily on the case of Lowry v. Rainwater, 70 Mo. 152. There this court had under consideration the statutes then applicable to the Board of Police Commissioners of the City of St. Louis providing for the seizure and destruction of gambling devices. An extension dining table had been seized and destroyed by the police on the charge that it was kept as a prohibited gaming table. We held that a summary mode of judicial proceedings should be provided in order to determine whether such property was used or held for purposes condemned by the statutes. That case is clearly distinguishable from the one now before us. There the property under the scrutiny of the court was in its very nature lawful and harmless. It was only by proof of its unlawful use that it became subject to destruction. The table in itself constituted no offense, but it was its employment in gaming which was unlawful and proof of that fact, we held, required judicial determination. Nor is the holding in State v. Howell, 83 Mo. App. 198, applicable because there the prosecution under Section 2199, Revised Statutes 1899, was for maintaining a gambling house where slot machines were kept when slot machines were not named in the statute as gambling devices so that proof of the character of the machines was required.

Here, the rotary merchandiser, as we have demonstrated above, is shown by the petition to be unlawful in itself. It is apparent from its construction that the device lends itself to no lawful purpose, but only to illegal use. Its only design and value is for use in violating our gambling statutes. That it is set up by the owner for use by the public is admitted in the petition, which action under our laws constitutes a felony. The maintenance of this device described by the owner as a gambling device, capable of no lawful use and being extensively used and displayed by the owner and his licensees for public play, is a public nuisance and the police under their general powers have the right to seize it and destroy it summarily. In addition to offending our criminal laws it is an offense to public order and welfare as well. "At the common law, acts done in violation of the law, or which are against good morals or public decency, and which result in injury to the public, constitute a public nuisance." [State v. Rabinowitz, 85 Kan. 841, 118 Pac. 1040, 39 L. R. A. (N. S.) 187.] On the subject of public nuisances see State ex rel. Crow v. Canty, 207 Mo. 439, 105 S. W. 1078; Ex parte Laymaster v.

Goodin, 260 Mo. 613, 168 S. W. 754; Eichenlaub v. City of St. Joseph, 113 Mo. 395, 21 S. W. 8; 20 R. C. L. (Nuisances), sec. 23.

Under Section 7543, Revised Statutes 1929, the powers and duties imposed on the police of the city of St. Louis are to "preserve the public peace, prevent crime and arrest offenders; . . . (to) see that all laws . . . regulating . . . gamblers . . . lotteries and lottery policies . . . are enforced."

In Maryland the same powers were conferred upon the Police Commissioners of Baltimore City. There an action for replevin was brought to recover from the police a slot machine which was admitted to be a gambling device, intended and designed for use in violation of the gambling laws and capable of no legitimate use. The court held in Police Commissioners v. Wagner, 93 Md. 182, that the most effective way of preventing its illegal use was to seize it as outlawed property. "The duty to prevent crime carries with it in such a case the power to summarily seize the offending article. It would be anomalous to hold that the Legislature, in imposing on the policeman an obligation to prevent crime, intended to deny him one of the most effective means of performing such obligation. The power of the Legislature to confer this authority under the police power cannot be questioned." [See, also, State v. Boyd, 108 Mo. App. 518, 84 S. W. 191.]

The destruction of similar devices as not being the subject of property and also as public nuisances has been upheld in other jurisdictions. [See Durant v. Bennett, 54 Fed. (2d) 634 at page 639; State ex rel. v. Kizer, 164 S. C. 383, 162 S. W. 444; 81 A. L. R. 722, which adopted the opinion of Durant v. Bennett, supra; Stanley-Thompson Liquor Co. v. People, 63 Colo. 456, 168 Pac. 750; Mullen & Co. v. Moseley, 13 Idaho, 457, 90 Pac. 986, 12 L. R. A. (N. S.) 394; Frost v. People, 193 Ill. 635, 61 N. E. 1054; Garland Novelty Co. v. State, 71 Ark. 138, 71 S. W. 257; 81 A. L. R. 730, note.]

▆ In the respondent's return to the provisional writ of prohibition, the constitutionality of Section 7557, Revised Statutes 1929, and following sections, is vigorously questioned. These sections invest the president of the police board with the power to determine the character and use of such property as is seized by the police as gambling devices. In view of our conclusions above we need express no opinion upon that question, nor do we need discuss it because regardless of these sections the general statutes, Sections 3783-88 are also available to the relators.

This court has recognized the rule that a court of equity generally will not interfere with the authorities charged with the enforcement of the criminal law. [Wellston Kennel Club v. Castlen, 331 Mo. 798, 55 S. W. (2d) 288; Kearney v. Laird, 164 Mo. App. 406, 144 S. W. 904.] Furthermore, courts generally will not sustain actions

in regard to property which has for its object the violation of the law as such property is "outlawed." [Spalding v. Preston, 21 Vt. 9.] And certainly a court of equity will not listen to a man who asks the court to protect an unlawful device. [Durant v. Bennett, supra, 54 Fed. (2d) 634; Pure Mint Co. v. LaBarre, 96 N. J. Eq. 186, 125 Atl. 105; Caille Co. v. Haager, 20 Ky. Law Rep. 1899, 50 S. W. 244; State v. Gambling Equipment (Ariz.), 40 Pac. (2d) 746; Tonahill v. Molony, 156 La. 753, 101 So. 130, supra.] The learned chancellor has no jurisdiction to hear this case.

The preliminary rule was providently issued and it is now made absolute. All concur.